**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RICKEY LAMAR EVANS, JR.,

      Petitioner,

v.                                                              Case No. 8:25-cv-2055-WFJ-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Rickey Lamar Evans, Jr., a Florida prisoner, initiated this action by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 7). Mr. Evans filed a reply. (Doc. 11). After careful review, the petition is **DENIED**.

## I.    Background

On July 1, 2023, Deputy Christian Stephens, an officer with the Hillsborough County Sheriff's Office, received a dispatch about a silver Kia sedan "that had a stolen tag." (Doc. 8-2, Ex. 20, at 36). Deputy Stephens ran the tag and confirmed that it belonged to a "stolen vehicle"—specifically, a blue Ford pickup truck. (*Id.* at 37). Soon after, Deputy Stephens found the silver Kia "parked at an AutoZone." (*Id.*) He called for backup, and law enforcement "took a strategic position" near the parking lot. (*Id.* at 39). Mr. Evans exited the AutoZone and entered the "driver's side" of the car. (*Id.* at 39, 41). Deputy Stephens and several other officers approached to remove Mr. Evans from the vehicle. (*Id.*

1

at 42). As he came near the driver's side door, Deputy Stephens "immediately detected the odor of burnt marijuana emitting from the vehicle." (*Id.*) Officers also noticed that a woman, later identified as Taliya Anderson, was sitting in the front passenger seat. (*Id.* at 44). She had a small amount of marijuana in her purse. (*Id.*, Ex. 25, at 52).

Based on the smell of marijuana, officers decided to search the vehicle. (*Id.*, Ex. 20, at 45). They found a backpack on the back passenger-side floorboard. (*Id.*, Ex. 25, at 43). It contained 28.69 grams of methamphetamine, a glass pipe, several "clear plastic baggies," and a wallet with Mr. Evans's identification card. (*Id.* at 43-46, 78-79, 108). Officers eventually learned that the car "had a valid registration." (*Id.*, Ex. 20, at 52). As noted above, however, the license plate on the car came from "a stolen vehicle." (*Id.*) At the time, Mr. Evans was on probation, and "[o]ne of the stipulations [of] his probation was not to operate a motor vehicle." (*Id.* at 47).

Mr. Evans was arrested and ultimately charged with trafficking in methamphetamine (over 28 grams but less than 200 grams), possession of fentanyl, and possession of drug paraphernalia. (*Id.*, Ex. 21). The possession-of-fentanyl count was *nolle prossed*. (*Id.*, Ex. 28, at 1). Mr. Evans filed two motions to suppress the evidence obtained from the vehicle, arguing primarily that Deputy Stephens "lacked reasonable suspicion for the stop." (*Id.*, Exs. 17-18). After an evidentiary hearing, the trial court denied both motions. (*Id.*, Ex. 20). The case proceeded to a jury trial, and Mr. Evans was found guilty as charged. (*Id.*, Ex. 25, at 187). For trafficking in methamphetamine, he received the

mandatory minimum of seven years' imprisonment. (*Id.* at 194-95). For possession of drug paraphernalia, he received a sentence of time served.[1] (*Id.*)

Mr. Evans appealed his convictions, arguing that the trial court erred in denying his motions to suppress. (*Id.*, Exs. 30, 32). The appellate court affirmed in an unexplained decision. (*Id.*, Ex. 34). Mr. Evans then filed a petition alleging ineffective assistance of appellate counsel. (*Id.*, Ex. 42). This, too, was denied without explanation. (*Id.*, Ex. 43). Having exhausted his state-court remedies, Mr. Evans timely sought federal habeas relief. (Doc. 1).

## II.   Standards of Review

### A.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] As discussed below, before trial Mr. Evans moved for reconsideration of the denial of his motions to suppress. (Doc. 8-2, Ex. 23). After trial, the court orally denied the motion during a brief status conference. (*Id.*, Ex. 24).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

### B.    Ineffective Assistance of Counsel

Mr. Evans alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of

professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Evans must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Mr. Evans must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### III.    Discussion

### A.    Ground One, Sub-Claim A—Denial of Motions to Suppress

Mr. Evans argues that the trial court erroneously declined to suppress the evidence recovered from his silver Kia. (Doc. 1 at 7; Doc. 11 at 1-3). According to him, the stop violated the Fourth Amendment because Deputy Stephens "lacked reasonable suspicion" that he had committed a crime. (Doc. 8-2, Ex. 17, at 4). Mr. Evans further argues that, because the stop was illegal, everything gathered afterwards from the car should have been excluded as fruit of the poisonous tree. (Doc. 11 at 2-3).

Mr. Evans is not entitled to relief because the trial court reasonably denied his motions to suppress.[2] Under the Fourth Amendment, an officer making a stop must have "reasonable suspicion"—that is, "a particularized and objective basis for suspecting the person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014). "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "Reasonable suspicion need not involve the observation of illegal conduct, but does require more than just a hunch." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). "To determine whether a suspicion was

---

[2] Respondent contends that this claim is barred by *Stone v. Powell*, which held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). Because the Fourth Amendment claim fails on the merits, the Court need not decide whether *Stone* applies. *See Mays v. Davenport*, 560 F. App'x 958, 962 (11th Cir. 2014) (declining to address whether "illegal arrest claim" was "precluded by *Stone*" because petition was "due to be denied on the merits").

reasonable, [a court] evaluate[s] the totality of the circumstances surrounding the stop, including the collective knowledge of all officers involved in the stop." *United States v. Bishop*, 940 F.3d 1242, 1249 (11th Cir. 2019).

Here, Deputy Stephens had reasonable suspicion that Mr. Evans violated Fla. Stat. § 320.261, which makes it a second-degree misdemeanor to "knowingly attach[]" a license plate to a vehicle to which that plate is not lawfully assigned. As noted above, Deputy Stephens received a dispatch about a silver Kia sedan "that had a stolen tag." (Doc. 8-2, Ex. 20, at 36). After confirming that the tag belonged to a "stolen vehicle" (a blue Ford pickup truck), Deputy Stephens located the Kia with the stolen tag "at an AutoZone." (*Id.* at 37). He and the other officers initiated the stop upon observing Mr. Evans exit the AutoZone and enter the driver's side of the Kia. (*Id.* at 39, 41-42). Under these circumstances, Deputy Stephens had "a particularized and objective basis for suspecting" that Mr. Evans committed a second-degree misdemeanor by knowingly attaching a stolen plate to his vehicle. *Navarette*, 572 U.S. at 396; *see also United States v. Garrette*, 745 F. App'x 124, 125-26 (11th Cir. 2018) (holding that officer's "initial stop was lawful" based on reasonable suspicion that defendant was violating Fla. Stat. § 320.261, which criminalizes "knowingly attach[ing] a license plate to a vehicle to which that plate is not lawfully assigned").

Having found that the stop was lawful, the Court considers whether the warrantless search of the vehicle violated the Fourth Amendment. It did not. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

7

"Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances." *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011). As he approached the driver's side door of the Kia, Deputy Stephens "immediately detected the odor of burnt marijuana emitting from the vehicle." (Doc. 8-2, Ex. 20, at 42). "[T]he smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle." *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015); *see also United States v. Alvarez*, No. 23-12286, 2025 WL 1672851, at *5 (11th Cir. June 13, 2025) ("The smell of marijuana creates probable cause to search a vehicle."). Therefore, law enforcement lawfully searched the vehicle based on Deputy Stephens's detection of the "odor of burnt marijuana." (Doc. 8-2, Ex. 20, at 42).

### B.    Ground One, Sub-Claim B—Failure to Challenge Denial of Motion for Reconsideration

One week before trial, Mr. Evans moved for reconsideration of the denial of his suppression motions. (*Id.*, Ex. 23). He asked the court to reopen the suppression hearing to take testimony from Ms. Anderson, the passenger in the silver Kia. (*Id.*) Ms. Anderson would allegedly testify that "the back of the [silver Kia] was so damaged she could not see a license plate." (*Id.* at 2). After trial, the court denied the motion without explanation during a brief status conference. (*Id.*, Ex. 24). Mr. Evans was not present at the conference.[3] (*Id.*)

On direct appeal, counsel challenged the denial of the suppression motions, arguing that law enforcement "lacked reasonable suspicion for an investigatory stop and the

---

[3] Mr. Evans attended the pretrial suppression hearing. (Doc. 8-2, Ex. 20).

subsequent search . . . was unlawful." (*Id.*, Ex. 32, at 24). According to Mr. Evans, counsel should have raised an additional argument—that the trial court "abused its discretion" by denying his motion for reconsideration at a hearing "without affording him [the right] to be present." (Doc. 1 at 7). Mr. Evans contends that counsel "had a duty to raise" this alleged due process violation. (*Id.*)

The appellate court rejected Mr. Evans's ineffective-assistance claim without explanation. (Doc. 8-2, Ex. 43). Where, as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. In this situation, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision." *Id.* at 102. Mr. Evans cannot prevail unless the decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Thus, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011).

Mr. Evans cannot meet his burden. "[E]ven in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). To establish a violation of this right, the defendant must show that "he could have assisted either his counsel or the court in a way that would have resulted in a

more reliable hearing." *United States v. Boyd*, 131 F.3d 951, 954 (11th Cir. 1997). The "privilege of presence is not guaranteed when presence would be useless, or the benefit but a shadow." *Stincer*, 482 U.S. at 745.

A reasonable jurist could conclude that Mr. Evans's presence at the status conference would not have "contribute[d] to the fairness of the procedure." *Id.* During the conference, the parties discussed whether the motion for reconsideration tolled the time to appeal, and whether a separate hearing was necessary to rule on the motion. (Doc. 8-2, Ex. 24, at 3-6). The court ultimately decided to "deny the motion" "without a [separate] hearing." (*Id.* at 5). Mr. Evans does not explain how his presence would have "assisted either his counsel or the court in a way that would have resulted in a more reliable [proceeding]." *Boyd*, 131 F.3d at 954. Because "there is no indication that [Mr. Evans] could have done [anything] had [he] been at the [status conference] nor would [he] have gained anything by attending," a reasonable jurist could conclude that his right to be present was not violated. *Stincer*, 482 U.S. at 747; *see also United States v. Karmue*, 841 F.3d 24, 27 (1st Cir. 2016) (no violation of right to be present because it was not "clear or obvious . . . what the benefit of [defendant's] presence at the hearing would have been"). Thus, "appellate counsel was not ineffective for failing to raise [this] nonmeritorious issue."[4] *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

---

[4] Mr. Evans appears to contend that counsel should have alerted the appellate court to certain remarks the trial judge made during the status conference. (Doc. 1 at 7-11). First, the judge stated that she had asked her "staff attorney" for assistance on "constructive possession law," which was relevant to Mr. Evans's motion for judgment of acquittal. (Doc. 8-2, Ex. 24, at 4). Second, the judge said that she was "not afraid of the Second DC[A] . . . grad[ing] [her] papers." (*Id.* at 5). A competent attorney could conclude that these remarks were not improper and had no bearing on any potential appellate issues.

It is unclear whether Mr. Evans intends to argue that appellate counsel had a duty to challenge the reconsideration ruling on the merits. (Doc. 1 at 7-15). Regardless, any such claim would fail because Mr. Evans cannot show that "there was no reasonable basis for the state court" to reject his assertion of ineffective assistance. *Richter*, 562 U.S. at 98. In his motion for reconsideration, Mr. Evans asked the trial court to reopen the suppression hearing to take testimony from Ms. Anderson, who would allegedly explain that "the back of the [silver Kia] was so damaged she could not see a license plate." (Doc. 8-2, Ex. 23). Mr. Evans claimed that Ms. Anderson made this statement at a deposition. (*Id.*) But he has never submitted a copy of the deposition transcript—not to the trial court, not to the appellate court that heard his petition alleging ineffective assistance of appellate counsel, and not to this Court. (*Id.*, Exs. 23, 40, 42). It is thus speculative whether Ms. Anderson would have testified in the manner Mr. Evans suggests. "Mere speculation that a missing witness would be helpful is insufficient to establish a *Strickland* violation." *Kennedy v. Sec'y, Dep't of Corr.*, No. 21-10714, 2022 WL 703834, at *1 (11th Cir. Feb. 8, 2022); *see also Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (holding that "speculation" about the testimony of a potential witness is "insufficient to carry the burden of a habeas corpus petitioner").

### C.    Ground Two—Failure to Raise Alleged Scoresheet Error

Mr. Evans faults appellate counsel for failing to raise an alleged error in the sentencing scoresheet. (Doc. 1 at 17). The scoresheet listed the "lowest permissible sentence" as 43.2 months' imprisonment. (Doc. 8-2, Ex. 42, at 19). As noted above, however, Mr. Evans faced a mandatory minimum of seven years' imprisonment for

11

trafficking in over 28 grams of methamphetamine. *See State v. Mease*, 200 So. 3d 161, 161 (Fla. 5th DCA 2016) (describing mandatory-minimum penalty for "trafficking in methamphetamine in an amount greater than 28 grams"). Under Florida law, "[i]f the lowest permissible sentence is less than the mandatory minimum sentence, the mandatory minimum sentence takes precedence." Fla. R. Crim. P. 3.704(d)(30). The trial court followed this directive, sentencing Mr. Evans to the seven-year mandatory minimum for trafficking in methamphetamine and to time served for possession of drug paraphernalia.[5] (Doc. 8-2, Ex. 25, at 194-95).

Despite the irrelevance of the lowest permissible sentence, Mr. Evans argues that it should have been listed on the scoresheet as 40.95 months rather than 43.2 months. (Doc. 1 at 17). He claims that the "prior record" section incorrectly lumped together 15 misdemeanor offenses without providing "individualized" information about each conviction. (*Id.*) Thus, the misdemeanors allegedly should have been "subtracted" from the "total [sentence] points," resulting in a lowest permissible sentence of 40.95 months rather than 43.2 months. (*Id.*; *see also* Doc. 8-2, Ex. 42, at 18-19). According to Mr. Evans, appellate counsel was obligated to raise this alleged scoresheet error on direct appeal. (Doc. 1 at 17-18).

The appellate court rejected Mr. Evans's ineffective-assistance claim without explanation. (Doc. 8-2, Ex. 43). Thus, he must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. He cannot do so. A competent

---

[5] The statutory maximum for the trafficking offense was 30 years' imprisonment. (Doc. 8-2, Ex. 42, at 19).

12

lawyer could have chosen not to raise the issue because any scoresheet error was harmless. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . .").

"When a scoresheet error is raised on direct appeal . . . , courts must apply the 'would-have-been-imposed' test to determine whether a scoresheet error warrants resentencing." *Ray v. State*, 987 So. 2d 155, 156 (Fla. 1st DCA 2008). "Under the 'would-have-been-imposed' test, scoresheet error is considered harmless if the record conclusively shows that the trial court would have imposed the same sentence using a correct scoresheet." *Id.* That is the case here. Correction of the alleged scoresheet error would have reduced the lowest permissible sentence from 43.2 months to 40.95 months. But the lowest permissible sentence was irrelevant because Mr. Evans faced a seven-year mandatory minimum for trafficking in methamphetamine. As explained above, the mandatory minimum "takes precedence" over "the lowest permissible sentence." Fla. R. Crim. P. 3.704(d)(30). Moreover, Florida courts "lack[] discretion to sentence a defendant below the mandatory minimum," *Mease*, 200 So. 3d at 162, and nothing in the record suggests that the court would have gone *above* the mandatory minimum had the misdemeanor offenses been removed from the scoresheet. Thus, resentencing was not "warrant[ed]" because even if the alleged scoresheet error had been corrected, the court "would have imposed the same sentence."[6] *Ray*, 987 So. 2d at 156.

---

[6] To the extent the petition could be liberally construed as raising a freestanding claim based on the alleged scoresheet error, it is not cognizable on federal habeas review because it rests on an alleged misapplication of Florida law. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("In the area of state sentencing guidelines in particular, [the Eleventh Circuit] consistently ha[s] held that federal courts cannot review a

13

## IV.   Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Evans's petition (Doc. 1) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Evans and to **CLOSE** this case.

3. Mr. Evans is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Evans must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Evans has not made the requisite showing. Because Mr. Evans is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on February 13, 2026.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

---

state's alleged failure to adhere to its own sentencing procedures." (collecting cases)). Even if the claim were cognizable, it would fail on the merits for the reasons discussed above.

14